**Below is a Memorandum Decision of the Court.**

*Mary Jo Heston*
**Mary Jo Heston**
**U.S. Bankruptcy Judge**
**(Dated as of Entered on Docket date above)**

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| In re: <br> DARCY SINCLAIR HALL and <br> BARBARA FLORENCE HALL, <br> Debtors. | Case No. 22-40967 <br><br> **Memorandum Decision on Trustee's Objection to Confirmation** |

This matter came before the Court on February 28 and March 30, 2023, on the Trustee's Objection to Confirmation with Strict Compliance ("Objection"). ECF No. 12. Darcy Hall and Barbara Hall ("Debtors") filed a response to the Objection. ECF No. 25. Both the Trustee and the Debtors filed supplemental briefs. ECF Nos. 32 and 33. The issue before the Court is whether it was proper for the Debtors to use net instead of gross income in calculating their current monthly income ("CMI") as members of two limited liability companies ("LLCs"). Having considered the arguments of counsel and pleadings in the record, the Court makes the following findings of fact and conclusions of law.

**I.   BACKGROUND AND FINDINGS OF FACT**

Debtor Darcy Hall is a phlebotomist employed by Oregon Reproductive Medicine in Portland, Oregon. He has been employed since April 2019, and works an average of 25–30 hours per week. Decl. of Darcy Hall 1:15–17, ECF No. 26. Line 2 of Official Form 122C-1, Chapter 13 Statement of Your Current Monthly Income and Calculation of

Commitment Period ("Form 122C-1") lists his average monthly gross wages from this employment for the six months prepetition as $1,071.75. Form 122C-1, ECF No. 2; Decl. of Darcy Hall 1:19–20, ECF No. 26.

Debtor Barbara Hall is a Pre-Registration Specialist employed full-time since March 2009, by Kaiser Permanente in Clackamas, Oregon. Decl. of Barbara Hall 1:15-16, ECF No. 27. Line 2 of Form 122C-1 lists her average monthly gross wages from this employment for the six months prepetition as $5,037.10. Form 122C-1, ECF No. 2; Decl. of Barbara Hall 1:18–19, ECF No. 27.

The Debtors are members of two LLCs: Jurassic Party Place, LLC ("JPP") and T-Rex Adventureland, LLC ("T-Rex"). The Debtors were the sole members of JPP, which discontinued operations on February 28, 2022. Decl. of Darcy Hall and Barbara Hall 1:23–24, ECF No. 26 and 27.

The Debtors have a 70% interest in T-Rex. The remaining 30% interest is held by an unrelated third party. Decl. of Darcy Hall 2:1–2, ECF No. 26. T-Rex is an operating business. The Debtors state that they each work 8–10 hours per week at T-Rex, but they do not receive a wage from T-Rex. Decl. of Darcy Hall 2:15, ECF No. 26.

The Debtors filed a chapter 13 bankruptcy petition on August 5, 2022. That same day, the Debtors filed Form 122C-1 (ECF No. 2) and a proposed Chapter 13 Plan (ECF No. 6). At line 2, the Debtors list gross wages, salary, tips, bonuses, overtime, and commissions for Darcy Hall of $1,071.65 and for Barbara Hall of $5,037.10. At line 5, the Debtors list their gross receipts from the operation of the two LLCs as $6,422.42 and the operating expenses as $12,720.25, resulting in no net monthly income.

Attached to Form 122C-1 is a separate statement captioned "Current Monthly Income Details for the Debtor" containing the following additional information regarding Line 5.

> Line 5 – Income from operation of a business, profession, or farm
> Source of Income: Business Income

Income/Expense/Net by Month:

| | Date | Income | Expense | Net |
|---|---|---|---|---|
| 6 Months Ago: | 02/2022 | $11,106.25 | $4,735.87 | $6,370.38 |
| 5 Months Ago: | 03/2022 | $1,203.36 | $45,183.30 | <$43,979.94> |
| 4 Months Ago: | 04/2022 | $8,873.75 | $7,954.91 | $918.84 |
| 3 Months Ago: | 05/2022 | $6,786.73 | $7,166.80 | <$380.07> |
| 2 Months Ago: | 06/2022 | $5,558.97 | $6,058.32 | <$499.35> |
| Last Month: | 07/2022 | $5,005.48 | $5,222.28 | <$216.80> |
| Average per month: | | $6,422.42 | $12,720.25 | |

Average Monthly NET Income: **<$6,297.82>**

According to the Debtors, JJP was in operation only the first month of the six-month means test period prior to the Debtors' bankruptcy filing. Additionally, business efforts for T-Rex did not begin until March 2022. The separate statement does not indicate whether the Debtors are entitled to 70% of the net income based on the T-Rex LLC agreement or some other arrangement.

As the Debtors have no net monthly income from a business, profession, or farm in Line 5 of Form 122C-1, the Debtors' CMI is $6,108.75, or $73,305 per year based solely on their wage income. The applicable median family income for a household of two in Washington State is $90,292. The Debtors therefore calculated that their applicable commitment period ("ACP") was 36 months and proposed a chapter 13 plan with a 36 month plan length.

Citing *Drummond v. Wiegand (In re Wiegand)*, 386 B.R. 238 (9th Cir. BAP 2008), the Trustee objected to confirmation of the Debtors' proposed Plan, stating that the Debtors took an "impermissible deduction of $12,720.25 for business expenses on Form 122C-1." Trustee Obj. 2:5–6, ECF No. 12. According to the Trustee, "'[A] chapter 13 debtor engaged in business may not deduct ordinary and necessary business expenses from gross receipts for the purpose of calculating current monthly income as defined under § 101(10A).'"

1  *Wiegand*, 386 B.R. at 239; Trustee Obj. 2:6–8, ECF No. 12. Disallowing this expense would
2  result in an ACP of 60 months. The Debtors filed a response, arguing that *Wiegand* does
3  not apply because they are not "self-employed." Debtors' Resp. 3–4, ECF No. 25. The
4  Debtors also filed declarations in support. ECF Nos. 26 and 27.

5  After a hearing held February 28, 2023, the Court continued the matter to March 30,
6  2023, and gave the parties an opportunity to file supplemental briefs. The Trustee filed a
7  supplemental brief on March 2, 2023. ECF No. 32. The Debtors filed a supplemental brief
8  on March 24, 2023. ECF No. 33. At the March 30, 2023 hearing, the Court heard oral
9  arguments from the Trustee and counsel for the Debtors and indicated that it would be
10 issuing this written decision.

## II. DISCUSSION AND CONCLUSIONS OF LAW

The issue in this case is whether, when calculating the ACP, the Debtors' business expenses for their LLCs may be deducted when determining "current monthly income," as set forth on Form 122C-1, or whether the Debtors must deduct the business expenses from CMI to calculate the Debtors' disposable income. Relying on *Wiegand*, the Trustee asserts that the Debtors must use gross business income when calculating the ACP. The Debtors disagree. The Court holds that the answer depends on the type and ownership of the business entity at issue, as well as certain other factors.

The concept of CMI was added to the Bankruptcy Code ("Code") by the amendments to 11 U.S.C. § 1325[1] under the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), which Congress enacted to ensure debtors repay creditors the maximum they can afford. *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 71 (2011). The term "current monthly income" is defined in the Code to mean the "average monthly income from all sources that the **debtor receives** (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income" during the six

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Federal Bankruptcy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

month period prior to filing. § 101(10A) (emphasis added). The Code does not define "income." While the Code uses the terms "gross income" and "net income" in several other sections,[2] § 101(10A) simply uses the term "income." CMI is used to determine the ACP based on whether the CMI is under or over the median family income for the state of residence.

By contrast, disposable income addresses the amounts a debtor is required to pay under a chapter 13 plan. "Disposable income" is defined to mean "current monthly income" received by the debtor less amounts reasonably necessary to be expended.[3] § 1325(b)(2). If a trustee or holder of an allowed unsecured claim objects to confirmation of a plan, the court may not approve such plan unless creditors are to be paid in full or the plan provides that all of the debtor's projected disposable income to be received in the ACP will be applied to make payments to unsecured creditors. § 1325(b)(1)(B).

To calculate CMI and the ACP, all chapter 13 debtors are required to complete Form 122C-1. Line 5 of Form 122C-1 instructs debtors to list "[n]et income from operating a business, profession, or farm." It contains a line item for deducting ordinary and necessary operating expenses from gross receipts to arrive at a net monthly income number. In cases where debtors are self-employed or sole proprietors, a dispute has arisen over whether Form 122C-1's use of net income to determine CMI is inconsistent with § 1325(b)(2)(B),[4] which explicitly allows for the deduction of business-related expenses when calculating disposable income. Stated differently, in these "self-employed" cases, the parties disagree on whether business expenses should be deducted "above the line" to calculate CMI—and

---

[2] *See, e.g.*, § 101(18)(A), § 521(a)(1)(B)(v).

[3] The method for determining "amounts reasonably necessary to be expended" depends on whether the debtor's CMI is above or below median. *See* § 1325(b)(2) and (3).

[4] "For purposes of this subsection, the term 'disposable income' means current monthly income received by the debtor . . . less amounts reasonably necessary to be expended—(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business." § 1325(b)(2)(B).

in turn required plan length—or "below the line" to calculate the Debtors' disposable income.

The Ninth Circuit Court of Appeals ("Ninth Circuit") has not addressed this issue, and the Court is not aware of any circuit-level cases on point from other circuits. The Bankruptcy Appellate Panel ("BAP") for the Ninth Circuit, however, has addressed the issue.

In *Wiegand*, the BAP concluded that a "self-employed debtor"[5] improperly calculated CMI by deducting business expenses from gross receipts. The BAP did not discuss the significance of a separate non-debtor entity generating the business income and how such fact affected the analysis. While not stated in the BAP decision, it is clear from the lower court decision that the debtor in *Wiegand* operated as a 100% debtor-owned LLC. *See In re Wiegand*, No. 07-60620, 2007 WL 2972603 at *1 (Bankr. D. Mont. Oct. 9, 2007) (noting that the trucking company operated by the debtor was Wiegand Trucking, LLC).

The BAP in *Wiegand* noted that the use of net income in Form 122C-1 was "directly at odds" with the Code, and that "when an Official Bankruptcy Form conflicts with the Code, the Code always wins." *Id.* at 241 (citing *In re Arnold*, 376 B.R. 652, 653 (Bankr. M.D. Tenn. 2007)). The BAP further relied on the fact that business expense deductions are specifically authorized by § 1325(b)(2)(B), which is "plain and unambiguous" and provides that these expenses are to be subtracted from CMI when calculating disposable income under § 1325(b)(2). *Id.* at 242. According to the BAP, "[i]f business expenses are deducted from gross receipts to determine a chapter 13 debtor's current monthly income, then there would be no need for 1325(b)(1)(B), which provides for the same deductions." *Id.* at 242. As statutes should "'not be construed in a manner which robs specific provisions

---

[5] The BAP used this terminology without explanation. Several authors have assumed that *Wiegand* merely involved a sole proprietorship, not a disregarded LLC as discussed *infra*. *See* Mark A. Redmiles & Saleela Khanum Salahuddin, *The Net Effect: Debtors with Business Income Are Permitted to Deduct Ordinary and Necessary Business Expenses in Calculating Current Monthly Income*, 27 Am. Bankr. Inst. J. 16 (Oct. 2008). *See also* Debtors' Resp., ECF No. 25; Debtors' Reply, ECF No. 33.

of independent effect,'" and because "§ 1325(b)(2) plainly and unambiguously requires a debtor to deduct business expenses from current monthly income," the BAP determined that the inquiry ends there—business expenses for "self-employed" debtors should not be deducted when calculating CMI. *Id.* at 242 (citation omitted). Other courts have joined in this debate.

Consistent with *Wiegand*, many courts have adopted the gross-income or so-called "majority" approach, ruling that debtors are required to list gross income on line 5 of Form 122C-1 when calculating CMI, and take business expenses deductions "below the line" when determining disposable income.[6] Courts adopting this approach have differed in their analyses, and some have struggled to harmonize what they see as an inconsistent and imprecise statutory scheme. Nonetheless, the common denominator in these gross-income cases is that the debtors have been characterized as sole proprietors or self-employed.

Disagreeing with *Wiegand*, several other courts have adopted the net-income or so-called "minority" approach, allowing debtors to deduct expenses "above the line" in calculating CMI.[7] As with the majority approach, the bases for the holdings in these cases vary. Unlike the gross-income cases, however, there does not appear to be a common

---

[6] *See, e.g.*, *In re Gonzalez*, 597 B.R. 133 (Bankr. D. Colo. 2018) (100% debtor owned LLC providing lawn maintenance services); *In re Kuwik*, 511 B.R. 696 (Bankr. N.D. Ga. 2014) (self-employed debtor in media production); *In re Hoffman*, 511 B.R. 128 (Bankr. D. Minn. 2014) (self-employed, type of business not stated); *In re Harkins*, 491 B.R. 518 (Bankr. S.D. Ohio 2013) (self-employed debtors in three separate bankruptcy proceedings); *In re Galley*, No. 10-63443, 2011 WL 12451613 (Bankr. N.D. Ohio Apr. 20, 2011) (sole proprietor in candle making business); *In re Compann*, 459 B.R. 478 (Bankr. N.D. Ga. 2010) (self-employed skin care consultant); *In re Bembenek*, No. 08-22607, 2008 WL 2704289 (Bankr. E.D. Wis. July 2, 2008) (self-employed, type of business not stated); *In re Sharp*, 394 B.R. 207 (Bankr. C.D. Ill. 2008) (self-employed Tae Kwon Do instructor); *In re Arnold*, 376 B.R. 652 (Bankr. M.D. Tenn. 2007) (self-employed, type of business not stated).

[7] See, e.g., *In re Romero*, No. 12-20793, 2013 WL 241742 (Bankr. S.D. Fla. Jan. 22, 2013) (self-employed truck driver); *In re Roman*, No. 11-01415, 2011 WL 5593143 (Bankr. D. P.R. Nov. 16, 2011) (self-employed truck driver); *In re Ramsey*, No. 10-55255 (E.D. Bankr. Mich. Oct. 4, 2011) (Pacer) (sole member of a PLLC law office); *In re Geiger*, No. 09-62433, 2010 WL 2756760 (Bankr. N.D. Ohio July 12, 2010) (sole shareholder of an S corporation); *In re Featherston*, Nos. 07-60296, 07-60441, 2007 WL 2898705 (Bankr. D. Mont. Sept. 28, 2007) (both self-employed truck drivers).

factual denominator, with courts instead relying on things like the language of Form 122C-1, the term "receives" contained in the definition of CMI, or the appropriate result based on the underlying facts.

Of the cases that have weighed in on this issue, only two cases in addition to *Wiegand* have been in the context of a non-debtor LLC: *Gonzalez* and *Ramsey*. Like *Wiegand*, these cases involved a sole-member LLC—100% owned by the debtors. In *Gonzalez*, the debtor owned and operated a lawn care business called Rocky Mountain Lawn Pros LLC. *Gonzalez*, 597 B.R. at 134. The *Gonzalez* court adopted the majority approach, holding that the business expenses of the sole-member LLC had to be deducted below the line. *Gonzalez*, 597 B.R. at 142. The court did so begrudgingly, though, commenting that while there appeared to be no way to construe all the applicable statutory provisions harmoniously, the majority approach was the most indicative of Congressional intent to have business expenses deducted to determine disposable income rather than CMI. "Congress could have chosen to tie the length of a debtor's plan to his disposable income, but it did not." *Gonzalez*, 597 B.R. at 143.

In *Ramsey*, the debtor was the sole member of a PLLC law office. *Ramsey*, No. 10-55255 (E.D. Bankr. Mich. Oct 4, 2011). Unlike in *Wiegand* and *Gonzalez*, however, the court in *Ramsey* adopted the minority approach, determining that because the debtor was operating her business through a separate entity, the debtor only "received" the net income of the law firm, as contemplated by the definition of CMI in § 101(10A). Significantly, the *Ramsey* court did not address the significance of the debtor operating what the Internal Revenue Code ("IRC") characterizes as a "disregarded entity." *See infra*.

The Debtors rely on *Ramsey* and attempt to distinguish *Wiegand*, arguing that unlike the debtor in *Wiegand*, they are not "self-employed."

> *Wiegand* involved a Debtor that operated a <u>sole proprietorship</u>. As a result, the Court described the Debtor as "self-employed". In that case, Debtor was the business entity. There was no separate entity such as an LLC or corporation

> between Debtor and his business. All business income and expenses were personally his.

Debtors' Resp. 3:9–15, ECF No. 25 (emphasis in original). As already indicated, however, the business entity operated by the debtor in *Wiegand* was an LLC, thus *Wiegand* is not distinguishable on this basis.

Part of the confusion surrounding the issue before the Court stems from the fact that both commentators and courts, including the *Wiegand* court, employ the terms "self-employed" and "sole proprietor" interchangeably and without further explanation. *See supra* notes 5–7. Self-employed is defined as "individuals who work for themselves and are not employed by another." *Self-Employed,* DICTIONARY OF BUSINESS TERMS (3d ed. 2000). Sole proprietor is "a business in which one person owns all the assets, owes all the liabilities, and operates in his or her personal capacity, without forming any business entity." 1 *Fletcher Cyclopedia of the Law of Corporations* § 23. By definition, a sole proprietor is self-employed. *Self-Employed*, DICTIONARY OF BUSINESS TERMS (the owner-operator of a sole proprietorship is considered self-employed).

The member of a single-member LLC also can be self-employed and a sole proprietor, at least for tax purposes. Under the IRC, the sole member of an LLC is the sole proprietor unless the member elects to treat the LLC as a corporation. Treas. Reg. § 301.7701-3(a) and (c). When acting as a sole proprietor, the LLC is a "disregarded entity," which means that the LLC is "ignored" for tax purposes, and the IRS treats the LLC and its owner as the same person. Treas. Reg. § 301.7701-3(b)(1)(ii). In this instance, only the owner files a personal tax return, which contains information about the LLC's business activities. In doing so, as with a sole proprietor, the owner of a single-member LLC is required to report gross income on Line 7 of Schedule C, which accompanies Form 1040. *Washington Partnership and LLC Deskbook (WSBA)* § 29.1(2). Although the taxpayer does not pay taxes on the gross income figure, this number is reported on the return.

Accordingly, consistent with *Wiegand*, the member of a disregarded LLC "receives" the gross income from the LLC for purposes of calculating CMI under the clear language of § 101(10A).[8] Although by definition a court is not to consider whether such income is "taxable income" for purposes of calculating CMI, the Court is not using the IRC for that purpose. The Court recognizes that "taxable income" is not synonymous with the term "income" as used in § 101(10A). It makes sense that Congress did not want CMI to be dependent on whether the debtor's income was taxable or not. The Court merely references the IRC to show that the member of a disregarded LLC reports the gross income of the LLC on his or her tax return—and that this is therefore income "received" by the debtor as opposed to the LLC. *See also Stanziale v. CopperCom, Inc. (In re Conex Holdings, LLC)*, 518 B.R. 792, 802 (Bankr. D. Del. 2014) ("As a disregarded entity, the [single member LLC's] assets, liabilities, income items, and deduction items will be treated as owned, owed, **received**, and incurred directly by its owner.") (emphasis added).

This Court also agrees that Form 122C-1 is inconsistent with § 1325(b)(2) in the circumstances discussed here and that the Code controls. *See Wiegand*, 386 B.R. at 242 ("We can conclude from the statutory language that the specificity of § 1325(b)(2)(B) controls—business deductions are to be taken from a debtor's current monthly income to arrive at the debtor's disposable income.") The Court further finds persuasive the extensive and thorough analysis by Judge Brown in *Gonzalez*. Although the Court is reluctant to find that an Official Form is in error and should be disregarded, it is unavoidable under these circumstances and up to Congress to either correct Form 122C-1 or amend the Code accordingly. Therefore, consistent with *Wiegand* and the cases that have adopted the majority approach, this Court concludes that it is improper for the member of a disregarded single-member LLC, who is therefore treated as a sole proprietor, to deduct business expenses at Line 5 of Form 122C-1.

---

[8] As stated *supra*, CMI "means the average monthly income from all sources that the debtor **receives**." § 101(10A)) (emphasis added).

In the case before the Court, the Debtors state that they had a 100% interest in JPP. *See* Decl. of Darcy Hall 1:22, ECF No. 26; Decl. of Barbara Hall 1:20, ECF No. 27. A married couple, who are the sole owners of an LLC and reside in a community property state, are treated as a single-member LLC and treated as a sole proprietorship unless they elect to be taxed as a different form of entity. *Washington Partnership and LLC Deskbook (WSBA)* § 29.1(2); Rev. Proc. 2002-69, 2002-45 I.R.B. 831. JPP was incorporated in the state of Washington, which is a community property state. Assuming that the Debtors in this case did not elect to be treated as a different type of business entity, they should have included gross-income for JPP on Form 122C-1 during the six months prior to filing. The Debtors state that JPP discontinued operations in February 2022. Decl. of Darcy Hall 1:23, ECF No. 26; Decl. of Barbara Hall 1:21, ECF No. 27. If this can be substantiated, as well as the gross income figure, the Debtors are required to report gross income for JPP for only that one month. Thus, Form 122C-1 will need to be amended to remove expenses of $4,735.87 for February 2022 and recalculate the average monthly income figures accordingly.

The Debtors also have a 70% interest in T-Rex, likewise incorporated in Washington. The Debtors represent that the remaining 30% membership interest is held by an unrelated third party.[9] A multi-member LLC (except for the married couple exception above) is not a disregarded entity and, by default, is taxed as a partnership unless elected to be taxed as a corporation. Treas. Reg. § 301.7701-3(b)(1)(i). A partnership, however, is a pass-through entity, passing the income through to the partners, who calculate the tax on their individual returns. *Washington Partnership and LLC Deskbook* (WSBA) § 29.1(2). The partnership must file an informational tax return and issue a K-1 to each partner, showing the partner's distributive share of the profits, losses, credits, and deductions. I.R.C. §§ 703 and 6031.

---

[9] Debtors' counsel represented at the March 30, 2023 hearing that the unrelated party is recently deceased. This fact does not change the court's analysis.

Unlike the member of a disregarded single-member LLC, the members of a multi-member LLC do not report the gross income of the LLC on their individual return. Rather, they report the distributive share of the net income they receive. "The tax is thus imposed upon the partner's proportionate share of the net income of the partnership . . . ." *Martignon v. Comm'r*, No. 7249-10S, 2012 WL 691321, at *2 (T.C. Mar. 1, 2012) (quoting *Heiner v. Mellon*, 304 U.S. 271, 281 (1938)). *See also* I.R.C. §§ 701, 702(a)(8), 704(a); 26 C.F.R. § 1.702-1(a).

The multi-member LLC raises a different issue than was considered in *Wiegand* and the other cases cited above. The Court is not aware of any case that addresses whether a member of a multi-member LLC may deduct business expenses in calculating CMI.

Although not directly on point, the Court finds *Geiger* to be instructive. *See supra* note 7. In *Geiger*, the debtor was the sole shareholder of a trucking company that was organized under Ohio law as an S corporation. An S corporation is an entity that elects to be taxed as a partnership with income passed through to the shareholders on a pro rata basis. *In re 800Ideas.com, Inc.*, 496 B.R. 165, 171 (9th Cir. BAP 2013). While S corporations must file an annual tax return, they generally do not pay federal taxes at the corporate level. *Id.* at 171 (citing I.R.C. § 6037). Instead, the net income or loss of the S corporation flows through to the shareholder. *See* I.R.C. § 1366(a)(2); *Vorreyer v. Comm'r of Internal Revenue,* T.C.Memo 2022-97, 2022 WL 4362799, at *3 (T.C. Sept. 1, 2022).

In calculating CMI, the debtor in *Geiger* used a net income figure, which resulted in the debtor being below median with a three-year ACP. Relying in part on *Wiegand*, the trustee objected to confirmation, arguing that the debtor should have used a gross income figure in calculating CMI. The court found *Wiegand* to be factually distinguishable as it involved a sole proprietor, not an S corporation. Focusing on §101(10A), which defines CMI in terms of income that the debtor "receives," the court stated that "there is a strong textual argument that the gross receipts are not income to debtor because he does not receive them because the income belongs to Corporation. Debtor 'receives' only the net

income or profit, the flow-through from the S corporation." *Geiger*, 2010 WL 2756760, at *4.

Under § 101(10A), Congress restricts the definition of CMI to income that "the debtor receives." As recognized by the BAP in *Wiegand*, a basic tenet of statutory interpretation is that the court must start with the plain meaning of the statute and "[i]f the statutory language is clear, we must apply it by its terms unless to do so would lead to absurd results." *Wiegand*, 386 B.R. at 241 (citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241–42 (1989)). As in *Geiger*, a multi-member LLC is a pass-through entity where the members "receive" only a pro rata share of the net income or loss based on applicable law and the terms of the operating agreement. This is a notable distinction from a disregarded single-member LLC, where the member is treated as a sole proprietor and "receives" the gross income of the LLC. Accordingly, for CMI purposes, the multi-member non-debtor LLC "receives" the gross income and the members "receive" their pro rata share of the net income or loss. Because a member does not "receive" the gross-income, the Court concludes that a member of a multi-member LLC is not required to use gross income numbers on Form 122C-1.

This plain meaning interpretation of § 101(10A) and the term "receives" is "not absurd because the Code is replete with rules and requirements that impact sole proprietors differently than wage earners." *Wiegand*, 386 B.R. at 243. More importantly, this interpretation is consistent with a long standing history of recognizing the separateness of non-debtor entities—and refusing to disregard the separate corporate form except in very narrow circumstances—in several areas of the Bankruptcy Code. *See, e.g.,* § 541(a)(1) (the assets of a corporation are not included in the bankruptcy estate of an individual shareholder); § 362 (the automatic stay does not extend to assets owned by a separate corporate entity).

In sum, this Court holds that in calculating CMI, the Debtors must include 100% of JPP's gross income unless they elected to be taxed as a corporation, and the applicable

Memorandum Decision on Trustee's Objection to Confirmation – 13
Case 22-40967-MJH    Doc 35    Filed 03/31/23    Ent. 03/31/23 15:08:23    Pg. 13 of 14

amount of net income for T-Rex based on the applicable non-bankruptcy law and operating agreement. As noted above, before the Court can rule on the ACP, the Debtors need to supplement the record with additional facts. The Debtors indicate that they have a 70% interest in T-Rex. Each member's percentage interest and any income and expense allocation should be set forth in the LLC agreement. It is unclear whether the income and expense numbers listed on the attachment to Form 122C-1 represent the Debtors' pro rata portion under the terms of the LLC agreement. As with JPP, these amounts and the Debtors' election with regard to T-Rex need to be verified and set forth in the record. The Debtors have 14 days from the date of entry of the Order on Trustee's Objection to Corporation to provide verification in the form of a declaration and exhibits (e.g. tax returns, LLC agreements, election documents) to the Trustee and to amend Form 122C-1 accordingly. As indicated at the March 30, 2023 hearing, the Trustee's Objection is continued to May 4, 2023, at 1:00 p.m.

/ / / End of Memorandum Decision / / /